NATHAN JACOBS *v*. STATE.

[60 South. 723.]

CRIMINAL LAW: *Trial. Remarks of counsel. Reversible error.*

Where the improper remarks of the District Attorney to the jury on the trial of a criminal case, cannot be said to have contributed to defendant's conviction, the case on appeal will not be reversed on that account.

APPEAL from the circuit court of Lincoln county. HON. D. M. MILLER, Judge.

Nathan Jacobs was convicted of crime and appeals. The facts are fully stated in the opinion of the court.

*Jas. F. Noble,* for appellant.

I will discuss that part of the district attorney's argument contained in the special bill of exceptions, relative to what he said about penitentiaries. He said he was becoming wedded to capital punishment; that he would never accept another life sentence where the evidence shows the man is guilty of murder as this does. I say this was improper. Nothing about anything of this kind was in evidence; and indeed the court would never have permitted such to have been placed in evidence. This was highly improper. The jury had nothing to do with what the learned district attorney had become wedded to. That was his business, and was none of theirs. It is the jury's business to arrive at their verdict from a consideration of the evidence in the case; upon a consideration of the evidence, guided by the instructions of the court, they are to arrive at their verdict; upon this, and this alone, have they a right to base their verdict. Such argument as this is calculated to confuse them and mislead them; surely it is improper, and therefore should not be permitted. No one can know just what effect such an armument will have. And in a case like this nothing should be permitted that would tend to work any unfairness upon the defendant, because the only testimony produced against him is in the alleged confessions. They say the confessions were perfectly free and voluntary; if they were, then the defendant was honest enough to tell the truth, and so, for this reason, and because this is the only way a conviction could ever have been gotten, he should have been treated as fairly as possible, and not prejudiced by such an argument.

And there will be found in the latter part of the bill of exceptions the following language of the district at-

torney: "I am getting tired of penitentiaries. There is no use to send a man there. You can send a man there for life, and he will only stay there for a short time and be pardoned; a dead man can't get pardoned." I say this is wrong and improper. It called into question the pardoning power of the state. It was an attack upon the pardoning power. He had no right to make this manner of argument. He as good as told the jury that the defendant would not be sufficiently punished if sent to the state prison. He said, "You send a man there and he stays a short time and is pardoned." I presume he meant if this man should be sent there, he would soon be pardoned. The district attorney spoke of his experience with penitentiaries. The jury has no right to take into consideration that some day a prisoner will, or may be, pardoned. The law gives the governor the right to pardon prisoners. The jury has no right to presume that the governor will commit a wrong by pardoning some person who should not be pardoned. It is to be presumed that he will remain in the penitentiary all his life; and that he will be pardoned, or that he will not be pardoned, has absolutely no place with the jury. Our laws were enacted by our lawmakers, elected by us, and they made the law giving the governor the right to pardon people convicted of crime. This has been the law for a long time. And when the jury fix a man's punishment in the penitentiary for life, so far as they know, or are concerned, it means that he will remain there the balance of his life. Also the district attorney has no right to say how long a man sent to the penitentiary will stay there. When a pardon is granted, the governor has the law on his side; and it is to be presumed that if a pardon is granted, it is done because it is right. And so I say this argument was very wrong and prejudicial to the defendant. Reference is made to the following decisions: *Windham* v. *State*, 91 Miss. 845; *State* v. *High*, 47 La. 878; *Clinton* v. *State*, 43 So. 312.

*Geo. H. Ethridge,* assistant attorney-general, for the state.

The questions of arguments of counsel are frequently presented in the courts of this state and other states, and it has been well settled in many cases, that a case will not be reversed even where the statement was error by the district attorney or other prosecuting office, if the case shows guilt. In the case of *Brown* v. *State,* 81 Miss. 143, 33 So. 170, the prosecuting attorney used the following language:

"If you are going to do like the jury did last week and turn everbody loose I try, regardless of evidence, why, I had just as well close up shop? If you are going to believe the defendant, this entire court is a farce, and he never denied his guilt until he got counsel."

It was held that while this statement was erroneous and improper, it could not cause a reversal where the evidence was plain.

Our court has decided a number of cases in which they have alluded to the questions springing out of arguments, and I desire expressly to call the attention of the court to the case of *Gray* v. *State,* 90 Miss. 235, l. c. 241, where the court discussed this question very forcibly, and held that prosecuting attorneys have some rights to argue a case, even where it may be objectionable to appellant.

In an Alabama case the prosecuting attorney said:

"You know the evils attendant upon these crap games; a crowd of negroes with a bottle of whiskey in one pocket and a pistol in the other, get together and gamble, and you know what crimes grow out of these meetings." *Denson* v. *State,* 139 Ala. 109.

It was held that this argument was not open to objection. I submit that the district attorney was within his rights in using the language that he used. It was perfectly proper for the district attorney to insist upon the

103 Miss—40

penalty provided by law, and he was evidently arguing a moral proposition, and did not undertake to state the law; the jury would follow the court rather than the district attorney on this proposition.

The appellant obtained several instructions, and if he entertained any doubt about the jury being influenced by the argument as a statment of law, he could easily have obtained an instruction from the court bearing out the court's statement at the empaneling of the jury as to what the law was.

In the Gray case above cited, the court said that there are cases which call for fierce invections; and that there are cases in which all the capacity of a really great lawyer and orator may be exercised to its fullest extent; and yet the defendant has no right to complain because the facts in the case may show a crime so horrible and atrocious as to shock the conscience of anyone who may have heard the evidence. In such cases great latitude may well be allowed in the interest of justice.

Cook, J., delivered the opinion of the court.

In the closing argument for the state, the district attorney used this language: "Gentlemen, you have the *power* to bring in a verdict of guilty as charged, and fix the punishment of defendant at life imprisonment in the state penitentiary; but you have not the *right* to do it under the facts in this case, just as I have the power to slap an infant child down, but I have not the right to do it;" and, "I am becoming wedded to capital punishment. I will never accept another sentence of life imprisonment where the evidence shows the man to be guilty of cold-blooded murder. I am getting tired of penitentiaries. There is no use to send a man there. You can send a man to the penitentiary for life, and he will only stay there a short while, and be pardoned; and a dead man can't get pardoned." This language invokes

*lex talionis,* and while. the law of this state is not so
harsh and near so vindicative as the learned and elo-
quent district attorney would like, we cannot say that
the lurid language of the advocate contributed to the
conviction of this defendant.    It may reasonably be
maintained that intemperate speech reacts to the confu-
sion of the speaker quite as frequently as it prejudices
the cause of the person against whom it is fulminated.

It will be observed that the district attorney, infer-
entially, is pleased to assume the prerogative of criti-
cising another department of the state government; but
as ·this involves a question of official propriety, quite
aside from the rights of the defendant, we refrain from
volunteering any views concerning that feature ·of his ·re-
marks.    Great latitude should be given by the courts to
attorneys in the argument of cases, but the remarks com-
plained of can scarcely be considered as argument.    The
legislature has, in capital cases, conferred upon juries
the discretion of fixing the punishment by the form of
their verdict.    The district attorney challenges the *right*
of the jury to exercise its legal. power, and, of course,
the jury have the same *right* to dictate to the learned
prosecuting officer when and how he shall exercise the
powers and privileges conferred upon him by the laws
of the state.    In other words, there is nothing in the
duties or powers of the district attorney, when arguing
the facts and law to a petit jury, which authorizes him
to assume the role of general adviser of the jury upon
matters peculiarly within the discretion of the jury.

No self-respecting judge would permit a prosecuting
officer to lecture him as to his right to fix the punishment
within lawful limits, and in the present instance the trial
judge should have interposed to protect the jury and the
defendant from the attorney's assumption of privileges
the law gives to the jury alone.    The remarks made by
the district attorney in the present case are of a type,
and the records of this court are frequently burdened

with exceptions of the sort now before us, and we take this method of advising trial judges of the views of the court.

*Affirmed.*